IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VIRGIL LEE HUBBARD, JR.,<br><br>Defendant. | Case No. CR13-1008<br><br>ORDER FOR PRETRIAL DETENTION |

On the 3rd day of July, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Dan Chatham. The Defendant appeared personally and was represented by his attorney, Raphael M. Scheetz.

## I. RELEVANT FACTS AND PROCEEDINGS

On June 27, 2013, Defendant Virgil Lee Hubbard, Jr., was charged by Indictment (docket number 2) with distribution of heroin near a playground (Counts 1, 2, 3, and 5) and aiding and abetting the distribution of heroin near a playground (Counts 4 and 6). At the arraignment on July 1, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on September 3, 2013.

The Government presented no evidence at the hearing. According to the pretrial services report, Defendant is 55 years old. Defendant was born and raised in Chicago, Illinois. He relocated from Chicago to Dubuque, Iowa, 12 years ago. Defendant had a long-term relationship with Catherine Thomas before her death in February 2013. Defendant has four adult children from his relationship with Ms. Thomas. All of his children reside in Dubuque.

1

Defendant has been employed as a cook at Houlihan's Restaurant for the past 5 months. The manager at Houlihan's told the pretrial services officer that Defendant was a "reliable" employee, but was unsure whether he could return to his job if released. Prior to working at Houlihan's, Defendant was employed as a carpenter. Defendant suffers from high blood pressure. He is prescribed medication as treatment. Defendant reports no history of mental or emotional health problems. Defendant told the pretrial services officer that he began using heroin on a weekly basis 30 years ago, and it progressed to daily use 2 years ago. In late 2012, Defendant sought treatment for his heroin addiction. However, in the past several months, he started using heroin again on a daily basis. His last use was about 2 days before his arrest on the instant charges.

Defendant has an extensive criminal record dating back to 1976 when he was 18 years old. At age 18, Defendant was charged with illegal transfer of liquor. The disposition of that charge is unknown. In August 1977, Defendant was charged and later convicted of possession of a sawed-off shotgun and selling a firearm. While those charges were pending, Defendant was arrested for murder in November 1977. The disposition of that charge is unknown. In May 1978, Defendant was charged and later convicted of possession of an unregistered firearm. He was sentenced to 6 years in prison. Defendant's sentence was discharged in February 1984.

In October 1980, Defendant was charged with murder; however, the disposition of that charge is unknown. In December 1980, Defendant was charged and later convicted of forgery. He received a deferred judgment on that charge. In January 1981, Defendant was charged with criminal trespass to vehicle and violation of illegal credit card act. Those charges were ultimately dismissed. In June 1981, while the charges were pending, Defendant was charged and later convicted of armed robbery. He was sentenced to 4 years in prison.

In March 1984, Defendant was charged and later convicted of forgery, armed violence, and armed robbery. He was sentenced to 4 years in prison on the forgery charge, and 7.5 years in prison on each of the remaining charges. In 1987, Defendant was charged in two separate cases with theft and prohibited use of a credit card. The disposition of both of those charges is unknown.

In May 1988, Defendant was charged and later convicted of theft. In October 1988, Defendant was charged and later convicted of forgery, credit card counterfeit, and retail theft. He was sentenced to 3 years in prison on the forgery charge, 2 years in prison on the counterfeit credit card charge, and 6 months in jail on the retail theft charge. He was paroled in July 1989, and his sentence was discharged in May 1990.

On March 23, 1990, while on parole, Defendant was charged in two separate cases with theft and theft of lost property, and theft from a person. The disposition of those cases is unknown. On March 10, 1992, Defendant was charged with retail theft. The disposition of that charge is unknown. On March 19, 1992, Defendant was charged and later convicted of possession of a stolen vehicle, fleeing/eluding, reckless driving, and driving with a suspended license. Defendant was sentenced to 4 years in prison. On March 28, 1992, while the March 19 charges remained pending, Defendant was charged with 2 counts of retail theft. He was sentenced to 2 years in prison on each of those charges.[1]

In March 1996, Defendant was charged with retail theft. The disposition of that charge is unknown. In June 1996, Defendant was charged and later convicted of retail theft. He was sentenced to 2 years in prison. Defendant was paroled on March 25, 1997. In November 1997, Defendant was charged in separate cases with retail theft twice and unlawful possession of a hypodermic needle. The disposition of those charges is unknown.

---

[1] Curiously, the pretrial services report states that Defendant was "released on parole" on September 8, 1993; November 10, 1994; and September 1, 1995; although there are no charges between March 1992 and March 1996.

In 1998, Defendant was charged in separate cases with criminal trespass, criminal trespass and theft, and theft. The disposition of each of those charges is unknown. In 1999, Defendant was charged with theft and obstructing justice. The disposition of that charge is unknown. In 2000, Defendant was charged with retail theft. The disposition of that charge is unknown, although the records show he was paroled on April 30, 2001. In 2004, Defendant was charged in two separate cases with criminal trespass to vehicle and retail theft. The disposition of those charges is unknown.

In April 2007, Defendant was charged with OWI in Grant County, Wisconsin. On June 11, 2007, Defendant was charged and later convicted of interference with official acts. On June 21, 2007, Defendant was charged and later convicted of OWI, second offense in Dubuque County, Iowa. He was also charged and later convicted of possession of a controlled substance. Defendant was placed in a residential facility for 2 years and was given a 30-day jail term on the possession charge. On September 22, 2007, while his June 2007 OWI charge was pending, Defendant was charged and later convicted of OWI, second offense.

On May 27, 2009, Defendant was charged and later convicted with third degree theft. On May 31, 2009, while the theft charge was pending, and while both OWI charges were pending, Defendant was charged in two separate cases with possession of drug paraphernalia and public intoxication. Both of those charges were ultimately dismissed. On June 1, 2009, while multiple charges were pending, Defendant was charged and later convicted of fourth degree theft and unlawful possession of a prescription drug. On June 26, 2009, while multiple charges remained pending, Defendant was charged and later convicted of fourth degree theft. On July 15, 2009, while charges remained pending, Defendant was charged and later convicted of second degree theft. Defendant was sentenced on all of these charges in November 2009. He was given suspended prison sentences and 5 years probation on all of the charges. In August 2010, Defendant was

found in contempt and sentenced to 90 days in jail on all of the charges. He was discharged from probation in February 2011 on all charges except the second degree theft charge. In the second degree theft charge, Defendant was found in contempt a second time, and sentenced to 60 days in jail. His probation in that case was discharged in October 2012.

In February 2010, while on probation, Defendant was charged and later convicted of fifth degree theft. In August 2012, while on probation, Defendant was charged with possession of drug paraphernalia. That charge was ultimately dismissed.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of

violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with distribution of heroin near a playground and aiding and abetting the distribution of heroin near a playground. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. Because no evidence regarding the charges was presented at the hearing, the Court makes no determination on the weight of the evidence in this case. As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin because its use often results in overdose and death. Defendant has been convicted of violent offenses in the past.

Defendant has been sentenced to prison at least seven times in the past. Defendant has a history of committing additional offenses while on pretrial release, probation, and parole. Defendant is addicted to heroin, and is a daily drug user. The Court has no confidence Defendant would comply with conditions of release. Therefore, based on the serious nature of the offenses, and the rebuttable presumption, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of the community. Accordingly, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (July 1, 2013) to the filing of this Ruling (July 3, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 3rd day of July, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA